973 So.2d 1233 (2008)
Marvin REICH, M.D., Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH, BOARD OF MEDICINE, Appellee.
No. 4D06-4019.
District Court of Appeal of Florida, Fourth District.
January 23, 2008.
Robert J. Conroy of Kern, Augustine, Conroy & Schoppman, P.C., New Jersey, for appellant.
Wings S. Benton, Tallahassee, for appellee.
KLEIN, J.
Appellant, an ophthalmologist, who was disciplined in this case based on part-time work he performed at a metabolic treatment center, appeals a final order of the Board of Medicine imposing a fine and limiting him to practicing ophthalmology. We reverse, because the findings were not supported by competent substantial evidence.
Although we reject appellant's argument that the charges were barred by the statute of limitations, the time line is of interest because it may have contributed to the paucity of evidence to support or defend the charges. The initial administrative action was filed against appellant in November 2000, and involved a patient unrelated to this case. It had not been resolved by late 2004, when the board added allegations concerning ten other patients, concerning treatment rendered from 1996 through 1998. It is the treatment of four of those ten patients which was the basis of the findings against appellant. That treatment arose out of a period when appellant, *1234 a board certified ophthalmologist from Deerfield Beach, was working two days a week at the "Metabolic Treatment Center" in Fort Meyers. The charges included unnecessary diagnostic testing, failure to keep accurate records and justify treatment, and other related charges.
After several continuances obtained by appellant, the hearing before the administrative law judge took place in December 2005. The ALJ found appellant guilty only as to four patients, and the findings involved unnecessary testing and treatment for financial gain and failure to maintain adequate medical records. The problem in the case arises out of the fact that the metabolic treatment center went out of business suddenly and unexpectedly, and appellant has never been able to obtain the medical records which he testified were stored in the computers at the center.
The findings of fact indicate that appellant, in order to supplement his income from practicing ophthalmology, started seeing patients two days a week at the metabolic treatment center. These patients were typically people who had many complaints which had not been resolved by other physicians. The treatment center began having problems shortly after there was a change in ownership which culminated when, without notice, people working there were locked out and the center was closed. In September 1999 the corporation owning and operating the center was administratively dissolved by the State of Florida.
Before the corporation was dissolved, appellant and another physician sued the center to obtain the medical records and secured a court order in June 1998 requiring the center to provide the original patient records; however, no records were ever obtained despite further efforts. The Board of Medicine also attempted to obtain appellant's medical records and was unsuccessful. Appellant did have some handwritten notes regarding the patients; however, appellant testified that these notes contained about five percent of the information appellant said he maintained in the records of the center's computer system. Appellant had no recollection of his treatment of the four patients, which occurred from 1996 to 1998, and accordingly the only evidence available consisted of his handwritten notes and some preprinted forms he had filled out.
The key findings of the ALJ regarding the medical records were as follows:
6. Neither party disputes the fact that, while employed at the Metabolic Treatment Center, Respondent kept handwritten medical notes on each patient whom he saw. Respondent testified that these brief handwritten notes constituted less than five percent of the chart entries that he made on each patient. Respondent testified that he supplemented his handwritten notes, which he made while seeing a patient, by dictating or otherwise inputting more elaborate notes into a computer at the center. Petitioner contends that the handwritten notes were the only medical records that Respondent prepared for each patient. The Administrative Law Judge credits Petitioner's contention.
7. Respondent attributed the loss of the more detailed medical records to the sudden termination of his relationship with the Metabolic Treatment Center and the subsequent refusal of the center's owners to allow Respondent access to these computer-stored records. It is impossible to credit Respondent's claim, at least to the extent of inferring the existence of extensive, detailed records for each of the patients in question.
8. Respondent knew that any data that he inputted into a computer at the *1235 Metabolic Treatment Center were in jeopardy, unless he made copies of the computer files. As a self-described "per diem" physician at the center, Respondent knew that, at anytime, he could lose access to the facility and the computer-stored data at the facility. Before his abrupt termination, Respondent had encountered growing problems with the new Metabolic Treatment Center owners. Familiar with computer hardware and software, Respondent easily could have made copies, of the computer files containing the medical records of his patients, but he failed to do so, and he cannot adequately explain this failure. The "failure" is because no such more detailed records ever existed.
The burden of proof on the department in an administrative case such as this one is to establish a violation by clear and convincing evidence. Dep't of Banking and Fin. v. Osborne Stern & Co., 670 So.2d 932 (Fla.1996). The finding of fact that appellant, a "per diem" physician working part time at the center, fabricated his testimony that medical records of these patients were stored on the computer, in light of the undisputed evidence as to the closing of the center and efforts by both parties to obtain the records, is not supported by competent substantial evidence.
The next issue we must address is whether our reversal as to the medical records leaves the remaining findings without evidentiary support. We conclude that it does.
The finding as to one of the patients, C.H., is typical of types of findings made as to all four of the patients. The ALJ found that as to C.H., the doctor had ordered nerve conduction velocity tests to rule out peripheral neuropathy of a diabetic nature, and concluded that, according to the medical records, appellant failed to address the question of diabetes. This failure, according to the ALJ, proved that the appellant never intended to act on the results of the nerve conduction velocity tests, and accordingly the tests were unnecessary and excessive. The findings underlying the sanctions for the other patients are also reliant on insufficient medical records and accordingly are not supported by competent, substantial evidence. We accordingly reverse the final order in its entirety.
POLEN and MAY, JJ., concur.